## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF COLORADO

Civil Action No. 21-CV-03120-NRN

WEINREIS ETHANOL, LLC a North Dakota limited liability company;
LAPASEOTES LAND LLC, a Nebraska limited liability company;
DINKLAGE FEED YARD, INC., a Nebraska corporation; and
EAST COAST AG HOLDINGS LLC, a Delaware limited liability company.

              Plaintiffs,

    v.

DAVID KRAMER
COLORADO AGRI PRODUCTS, LLC, a Colorado limited liability company; and
JOHN AND JANE DOES NOS. 1-25.
              Defendants.

---

## DEFENDANTS' ANSWER TO COMPLAINT AND JURY DEMAND

Defendants David Kramer ("Mr. Kramer") and Colorado Agri Products, LLC ("CAP"), by and through their attorneys, Lewis Brisbois Bisgaard & Smith LLP, hereby submit the following Answer to Plaintiffs' Complaint and Jury Demand ("Complaint") submitted by Weinreis Ethanol, LLC ("Weinreis LLC"), Lapaseotes Land LLC ("Lapaseotes Land"), Dinklage Feed Yard, Inc. ("Dinklage Feed"), and East Coast Ag Holdings LLC ("East Coast Ag") (collectively, "Plaintiffs").  Defendants deny each and every allegation contained in the Complaint that is not specifically admitted below.

### I.      Nature of the Action

1.     Defendants admit that Plaintiffs filed this action.  Defendants deny the remaining allegations in Paragraph 1 of the Complaint and any inferences therein.

2.     Defendants admit that Bridgeport Ethanol, LLC ("Bridgeport") is a producer of

ethanol and distiller wet grains. Defendants admit that Bridgeport's ethanol-production plant is located in Bridgeport, Nebraska. Defendants admit that Bridgeport, through the purchase and process of corn, manufactures ethanol and sells its products to purchasers of ethanol and grains throughout Nebraska and across the country. Defendants admit that Bridgeport produces a certain quantity of ethanol and a certain quantity of distiller wet grains annually. Defendants deny the remaining allegations in Paragraph 2 of the Complaint and any inferences therein.

3. Defendants admit the allegations contained in Paragraph 3 of the Complaint.

4. Defendants admit that Mr. Kramer is the co-founder, co-owner, and General Manager of CAP. Defendants admit that Mr. Kramer is also the Managing Manager of Bridgeport under Bridgeport's Operating Agreement. Defendants admit that Mr. Kramer has directed day-to-day operations about Bridgeport and its operations. Defendants deny the remainder of the inferences in the last sentence of Paragraph 4 of the Complaint and deny the remaining allegations contained in Paragraph 4 of the Complaint.

5. Defendants admit that Plaintiffs are members of and investors in Bridgeport. Defendants deny the remaining allegations contained in Paragraph 5 of the Complaint and any inferences therein.

6. Defendants deny the allegations contained in Paragraph 6 of the Complaint and any inferences therein.

7. Defendants deny the allegations contained in Paragraph 7 of the Complaint and any inferences therein.

8. Defendants deny the allegations contained in Paragraph 8 of the Complaint and any inferences therein.

9. Defendants admit that CAP hired Trevor Morgan ("Mr. Morgan") as the new

General Manager for the Bridgeport plant in August 2021. Defendants admit that Mr. Morgan previously worked as a Senior Technical Account Manager for Phibro Ethanol Performance Group and, before that, at Novozymes Bioenergy. Defendants deny that Phibro Ethanol Performance Group is a sponsor of Mr. Kramer's racing teams and deny that Novozymes Bioenergy is Mr. Kramer's sponsor. Defendants deny the remaining allegations in Paragraph 9 of the Complaint and any inferences therein.

10.     Defendants deny the allegations in Paragraph 10 of the Complaint and any inferences therein.

## II.     Parties

### A.     Plaintiffs

11.     Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in Paragraph 11 of the Complaint, and all subparts of Paragraph 11 of the Complaint, and therefore deny the same.

12.     Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in Paragraph 12 of the Complaint, and all subparts of Paragraph 12 of the Complaint, and therefore deny the same.

13.     Upon information and belief, Defendants admit the allegations contained in Paragraph 13 of the Complaint.

14.     Defendants are without sufficient information or knowledge to form a belief as to the truth of the allegations set forth in Paragraph 14 of the Complaint, and all subparts of Paragraph 14 of the Complaint, and therefore deny the same.

### B.     Defendants

15.     Defendants admit the allegations in Paragraph 15 of the Complaint.

16.     Defendants deny the allegations in Paragraph 16 of the Complaint to the extent that

the address does not list the suite number. Defendants admit that CAP is a Colorado limited liability company with its principal office and place of business at 450 Angus Avenue, Suite 1, Sterling, Colorado 80751. Defendants further admit that CAP is a citizen of the State of Colorado for the purposes of diversity jurisdiction.

17.      Defendants admit the allegations in Paragraph 17 of the Complaint.

18.      The allegations contained in Paragraph 18 of the Complaint are legal conclusions to which no response is required. Defendants have no knowledge as to the allegations contained in Paragraph 18 of the Complaint. To the extent a response is required, Defendants deny the allegations contained in Paragraph 18 of the Complaint.

19.      The allegations contained in Paragraph 19 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 19 of the Complaint.

20.      The allegations contained in Paragraph 20 of the Complaint are legal conclusions to which no response is required. To the extent a response is required, Defendants deny the allegations contained in Paragraph 20 of the Complaint.

### III.      Jurisdiction and Venue

21.      With respect to the allegation in paragraph 21 of Plaintiffs' Complaint, Defendants do not contest this Court's jurisdiction but deny any inference that Defendants are liable for the claims asserted herein.

22.      With respect to the allegations in paragraph 22 of Plaintiffs' Complaint, Defendants do not contest that venue is proper but deny any inference that Defendants engaged in the conduct allegedly giving rise to the claims asserted by Plaintiffs.

#### IV.     General Allegations

**A.     Bridgeport**

23.     Defendants admit the allegations contained in Paragraph 23 of the Complaint.

24.     Defendants admit the allegations contained in Paragraph 24 of the Complaint.

25.     Defendants admit the allegations contained in Paragraph 25 of the Complaint.

**B.     Bridgeport's Operating Agreement**

26.     Defendants admit that Mr. Kramer and Plaintiffs signed the Bridgeport Operating Agreement.  Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 26 of the Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

27.     Defendants admit that one or more portions of the Bridgeport Operating Agreement describes the purpose of Bridgeport.  Defendants further admit that the paragraph quoted in Paragraph 27 of the Complaint corresponds with a portion of text in Exhibit 1 to the Complaint. Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 27 of the Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

28.     Defendants admit that the Bridgeport Operating Agreement identifies the Managers and Members of Bridgeport.  Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 28 of the Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

29.     Defendants admit that Mr. Kramer, Bill Bornhoft, Larry Baucke, Galyn Einspahr, Charles Weinreis, Randy Faessler, and Scott Schiff are Bridgeport managers and comprise the Bridgeport board of directors.  Defendants admit that there are Class-A and Class-B appointed Managers.  Defendants deny the remaining allegations in Paragraph 29 of the Complaint and any inferences therein.

30.     Defendants admit that, since 2007, Mr. Kramer has served as the Managing Manager of Bridgeport.  Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 30 of the Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

31.     The allegations contained in Paragraph 31 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that Mr. Kramer is under duties and obligations to comply with contractual obligations.  Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 31 of the Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

32.     The allegations contained in Paragraph 32 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that Mr. Kramer is under duties and obligations to comply with contractual obligations.  Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 32 of the

Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

33.     The allegations contained in Paragraph 33 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants admit that Mr. Kramer is under duties and obligations to comply with contractual obligations.  Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 33 of the Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

34.     Defendants admit that the first quoted portion in Paragraph 34 of the Complaint pertaining to Section 8.1 corresponds with a portion of text in Exhibit 1 to the Complaint. Defendants deny that Plaintiffs accurately quoted the second quote contained in Paragraph 34 of the Complaint pertaining to Section 8.2, even taking into account Plaintiffs' use of brackets. Defendants further admit that Exhibit 1 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 34 of the Complaint because the Bridgeport Operating Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

C.     **CAP**

35.     Defendants admit that CAP was founded in 2004.  Defendants admit that Sterling Ethanol, LLC was formed in 2004, not 2005.  Defendants admit that CAP provided management services to   Sterling Ethanol, LLC and, over time, CAP expanded its business plan and began providing management services to an ethanol plant in Yuma, Colorado (Yuma Ethanol, LLC). Defendants further admit that Bridgeport Ethanol, LLC was formed in 2006.  Defendants deny the

remainder of the allegations contained in Paragraph 35 of the Complaint.

36.     Defendants admit that CAP has managed the day-to-day operations of the Bridgeport ethanol and wet distiller grains plant.  Defendants further admit that CAP has conducted operations in compliance with the Management Agreement.  Defendants further admit that Exhibit 2 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 36 of the Complaint because the Management Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

37.     Defendants admit that CAP oversees a certain quantity of annual ethanol production for Bridgeport and performs other functions on behalf of Bridgeport.  Defendants further admit that Exhibit 3 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 37 of the Complaint because the Wet Distillers Grain Marketing Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

**D.     The Management Agreement Between Bridgeport and CAP**

38.     Defendants admit that Bridgeport hired CAP in 2007 to provide Bridgeport with management and procurement services to, and to manage, supervise, and conduct the daily affairs of Bridgeport's plant.  Defendants deny the remaining allegations contained in Paragraph 38 of the Complaint.

39.     Defendants admit that, on September 1, 2007, Bridgeport and CAP entered into a Management Agreement.  Defendants further admit that Exhibit 2 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 39 of the Complaint because the Management Agreement,

being a writing, speaks for itself and any characterization of the writing is expressly denied.

40.    Defendants admit that the quoted portion of Paragraph 40 of the Complaint corresponds with a portion of text in Exhibit 2 to the Complaint.  Defendants admit that Exhibit 2 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 40 of the Complaint because the Management Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

41.    Defendants admit that the quoted portion of Paragraph 41 of the Complaint, from the beginning of the quote up through subpart (c), corresponds with portions of text in Exhibit 2 to the Complaint, except that Defendants deny that bold text appears in the portions of text in Exhibit 2 to the Complaint.  Defendants deny that the quoted portion of Paragraph 41 of the Complaint denoted as subpart (d) is accurately quoted.  Defendants admit that the quoted portion of Paragraph 41 of the Complaint, from the portion denoted as subpart (e) up through subpart (l), corresponds with portions of text in Exhibit 2 to the Complaint, except that Defendants deny that bold text appears in the portions of text in Exhibit 2 to the Complaint.  Defendants further admit that Exhibit 2 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 41 of the Complaint, and all subparts of Paragraph 41 of the Complaint, because the Management Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

42.    The allegations contained in Paragraph 42 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 42 of the Complaint.  Defendants further deny the allegations in Paragraph 42 of the Complaint because the Management Agreement, being a writing, speaks

for itself and any characterization of the writing is expressly denied.

43.     Defendants admit that the quoted portion of Paragraph 43 of the Complaint, from the beginning of the quote up through subpart (f), corresponds with portions of text in Exhibit 2 to the Complaint.  Defendants deny that the quoted portion of Paragraph 43 of the Complaint denoted as subpart (g) is accurately quoted, as the word "Plant" is not capitalized in Exhibit 2 to the Complaint.  Defendants admit that the quoted portion of Paragraph 43 of the Complaint, from the portion denoted as subpart (h) up through subpart (j), corresponds with portions of text in Exhibit 2 to the Complaint.  Defendants further admit that Exhibit 2 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 43 of the Complaint, and all subparts of Paragraph 43 of the Complaint, because the Management Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

44.     Defendants admit that the quoted portion of Paragraph 44 of the Complaint, other than the misspelling of the word "on," corresponds with portions of text in Exhibit 2 to the Complaint.  Defendants further admit that Exhibit 2 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 44 of the Complaint because the Management Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

45.     Defendants admit that the quoted portion of Paragraph 45 of the Complaint corresponds with portions of text in Exhibit 2 to the Complaint.  Defendants further admit that Exhibit 2 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 45 of the Complaint because the Management Agreement, being a writing, speaks for itself and any characterization of

the writing is expressly denied.

46.     Defendants admit that Bridgeport pays CAP a marketing fee.  Defendants admit that Bridgeport pays CAP a commission for purchasing.  Defendants further admit that Exhibits 2, 3, and 4 to the Complaint must be restricted in their entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 46 of the Complaint because the Management Agreement, Wet Distillers Grain Marketing Agreement, and Grain Purchasing Agreement, being writings, speak for themselves and any characterizations of the writings are expressly denied.

47.     Defendants admit that, since 2007, Bridgeport has paid money to CAP.  Defendants deny the remaining allegations contained in Paragraph 47 of the complaint.

48.     Defendants admit that Bridgeport's business and operations depend on the management and oversight of CAP.   Defendants deny the remaining allegations contained in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations contained in the first sentence of Paragraph 49 of the Complaint because the Management Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.  Defendants deny the remaining allegations contained in Paragraph 49 of the Complaint.

E.     **Bridgeport's Other Agreements with CAP**

50.     Defendants admit that Bridgeport entered into a Wet Distillers Grain Marketing Agreement with CAP, dated September 1, 2007, for the purposes of CAP marketing all wet distillers grains produced by Bridgeport's plant in Bridgeport, Nebraska.  Defendants further admit that Exhibit 3 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 50 of the Complaint

because the Wet Distillers Grain Marketing Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

51.    Defendants admit that Bridgeport entered into a Grain Purchasing Agreement with CAP, dated September 1, 2007, for the purposes of having CAP purchase all grains used by the Bridgeport plant for the production of ethanol.   Defendants further admit that Exhibit 4 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).   Defendants deny any other allegations in Paragraph 51 of the Complaint because the Grain Purchasing Agreement, being a writing, speaks for itself and any characterization of the writing is expressly denied.

**F.      Defendants' Wrongdoing**

52.    Defendants deny the allegations contained in Paragraph 52 of the Complaint.

**1.      Kramer's Repeated Improper Use of Funds and Resources**

53.    Defendants deny the allegations contained in Paragraph 53 of the Complaint.

54.    Defendants deny the allegations contained in Paragraph 54 of the Complaint, and each subpart of Paragraph 54 of the Complaint, in their entirety.

55.    Defendants deny the allegations contained in the first sentence of Paragraph 55 of the Complaint.   The remaining allegations contained in Paragraph 55 of the Complaint pertaining to the Colorado Revised Statutes are legal conclusions to which no response is required.   To the extent a response is required, Defendants deny the remaining allegations contained in Paragraph 55 of the Complaint pertaining to the Colorado Revised Statutes.

56.    Defendants deny the allegations contained in Paragraph 56 of the Complaint.

57.    Defendants deny the allegations contained in Paragraph 57 of the Complaint.

**2.      The Scheme To Obtain Sponsorships for Kramer's Racing Teams**

58.     Defendants deny the allegations contained in Paragraph 58 of the Complaint.

59.     Defendants deny the allegations contained in Paragraph 59 of the Complaint.

60.     Defendants deny the allegations contained in Paragraph 60 of the Complaint.

61.     Defendants deny the allegations contained in Paragraph 61 of the Complaint.

62.     Defendants admit that Mr. Kramer corresponded via text message with Suzie Free and Ted Free ("Mr. Free"), including the exchange of a graphic photo, about which Mr. Kramer and Suzie Free joked.  Defendants deny the remaining allegations contained in Paragraph 62 of the Complaint.

63.     Defendants admit that Ted Free received an email from Patrick Denton, which outlined that Mr. Denton had accidentally included an additional page and requested that Mr. Free keep the additional page confidential and discard it, as it was not relevant to what was intended to be sent.  Defendants deny the remaining allegations contained in Paragraph 63 of the Complaint.

64.     Defendants deny the allegations contained in Paragraph 64 of the Complaint.

65.     Defendants admit that Mr. Kramer signed a document entitled "Kramer Racing American Ethanol NHRA ProStock Sponsorship."  Defendants further admit that Exhibit 5 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding (Dkt. 14).  Defendants deny any other allegations in Paragraph 65 of the Complaint because the document entitled "Kramer Racing American Ethanol NHRA ProStock Sponsorship," being a writing, speaks for itself and any characterization of the writing is expressly denied.

66.     The allegations contained in Paragraph 66 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 66 of the Complaint.  Defendants further admit that Exhibit 5 to the Complaint must be restricted in its entirety, per Defendants' Motion to Restrict Proceeding

(Dkt. 14).  Defendants deny any other allegations in Paragraph 66 of the Complaint because the document entitled "Kramer Racing American Ethanol NHRA ProStock Sponsorship," being a writing, speaks for itself and any characterization of the writing is expressly denied.

67.     Defendants deny the allegations contained in Paragraph 67 of the Complaint.

68.     Defendants deny the allegations contained in Paragraph 68 of the Complaint.

69.     Defendants deny the allegations contained in Paragraph 69 of the Complaint.

70.     Defendants admit that Sterling Racing Team displayed logos, graphics, and decals on its race car and other gear which displayed the names and information of additional supplier sponsors.  Defendants deny the remaining allegations contained in Paragraph 70 of the Complaint.

**3.      Self-Dealing by Kramer Individually and Through CAP and John and Jane Does Nos. 1 – 25**

71.     Defendants deny the allegations contained in Paragraph 71 of the Complaint.

72.     Defendants deny the allegations contained in Paragraph 72 of the Complaint.

73.     Defendants deny the allegations contained in Paragraph 73 of the Complaint as written.   Defendants admit that one member of Mr. Kramer's family was hired to handle compliance management at the Sterling plant related to Bridgeport's carbon credit scores, which is important to marketing and selling products in certain states, including California.  Defendants deny the remaining allegations contained in Paragraph 73 of the Complaint.

74.     Defendants deny the allegations contained in Paragraph 74 of the Complaint.

**4.      The Wrongful Conduct with Respect to Mr. Free**

75.     Defendants deny the allegations contained in Paragraph 75 of the Complaint.

76.     Defendants will answer each subpart of Paragraph 76 of the Complaint below:

(a)     Defendants deny the allegations contained in Paragraph 76, subpart (a), of the Complaint.

(b)      Defendants deny the allegations contained in Paragraph 76, subpart (b), of the Complaint.

(c)      Defendants deny the allegations contained in Paragraph 76, subpart (c), of the Complaint.

(d)      Defendants admit that Mr. Kramer has served as Director of Operations since the Bridgeport plant opened.  Defendants deny the remaining allegations contained in Paragraph 76, subpart (d), of the Complaint, and any inferences therein.

(e)      Defendants admit that attorney Ronald Brotzman, on June 29, 2020, notified Mr. Free that his employment agreement as the General Manager of Bridgeport, dated February 1, 2009, was terminated effective 180 days later and that Mr. Free's employment would continue, now only "at will," with CAP having the ability to terminate his employment at any time for any reason, with or without notice.  Defendants deny the remaining allegations contained in Paragraph 76, subpart (e), of the Complaint.

77.      Defendants deny the allegations contained in Paragraph 77 of the Complaint.

78.      Defendants deny the allegations contained in Paragraph 78 of the Complaint.

79.      Defendants deny the allegations contained in Paragraph 79 of the Complaint.

80.      Defendants deny the allegations contained in Paragraph 80 of the Complaint.

81.      Defendants admit that on May 19, 2021, Mr. Free was terminated from his position as Bridgeport's General Manager.   Defendants deny the remaining allegations contained in Paragraph 81 of the Complaint.

82.      Defendants admit that Mr. Free was invited to a restaurant.  Defendants admit that Mr. Free was met by Mr. Kramer and his attorney.  Defendants admit that Mr. Kramer contacted the police.  Defendants admit that Mr. Free was informed of his termination after leaving the

restaurant.  Defendants deny the remaining allegations contained in Paragraph 82 of the Complaint.

83.     Defendants admit that the quoted portion of Paragraph 83 of the Complaint corresponds with portions of text in an email sent by Mr. Kramer.  Defendants deny any other allegations in Paragraph 83 of the Complaint, because the email, being a writing, speaks for itself and any characterization of the writing is expressly denied.

84.     Defendants admit that the Bridgeport board of directors did not have advance notice of Mr. Free's termination.  Defendants deny the remaining allegations contained in Paragraph 84 of the Complaint.

85.     Defendants admit that Mr. Morgan was hired to oversee the Bridgeport plant. Defendants admit that Mr. Morgan had worked at Novozymes and Phibro in the past.  Defendants admit that Novozymes and Phibro sponsored a racing team.  Defendants deny the remaining allegations contained in Paragraph 85 of the Complaint.

**5.     The Wrongful Conduct with Respect to Bridgeport's Plant**

86.     Defendants deny the allegations contained in Paragraph 86 of the Complaint.

87.     Upon information and belief, Defendants deny the allegations contained in Paragraph 87 of the Complaint.

88.     Defendants deny the allegations contained in Paragraph 88 of the Complaint.

89.     Defendants deny the allegations contained in Paragraph 89 of the Complaint.

90.     Defendants deny the allegations contained in Paragraph 90 of the Complaint.

**IV.     Claims for Relief**

**First Claim for Relief**

91.     Defendants incorporate by reference their previous answers above as if fully set forth herein.

92.     The allegations contained in Paragraph 92 of the Complaint are legal conclusions

to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 92 of the Complaint.

93.     The allegation contained in Paragraph 93 of the Complaint is a legal conclusion to which no response is required.  To the extent a response is required, Defendants deny the allegation contained in Paragraph 93 of the Complaint.

94.     The allegations contained in Paragraph 94 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 94 of the Complaint.

95.     The allegations contained in Paragraph 95 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 95 of the Complaint.

## Second Claim for Relief

96.     Defendants incorporate by reference their previous answers above as if fully set forth herein.

97.     The allegations contained in Paragraph 97 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 97 of the Complaint.

98.     The allegations contained in Paragraph 98 of the Complaint, and each subpart of Paragraph 98 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the allegations contained in Paragraph 98 of the Complaint, as well as each subpart of Paragraph 98 of the Complaint.

99.     The allegations contained in Paragraph 99 of the Complaint are legal conclusions to which no response is required.  To the extent a response is required, Defendants deny the

allegations contained in Paragraph 99 of the Complaint.

## V.      Demand for Judgment

Defendants deny that Plaintiffs are entitled to judgment in their favor against Defendants on any and all claims for relief for damages in any amount. Defendants deny that Plaintiffs are entitled to declaratory judgment concerning Plaintiffs' rights and Defendants' duties and obligations arising in connection with Bridgeport. Defendants deny that Plaintiffs are entitled to any of the relief contained in subparts A–C in Section V of the Complaint.

## VI.      Jury Demand

Plaintiffs waived their right to a trial by jury according to the terms of the Operating Agreement.

## VII.      Affirmative Defenses

Without assuming any burden of proof, Defendants assert the following affirmative defenses to Plaintiffs' Complaint:

1.      Jury Trial: Plaintiffs waived their right to a jury trial according to the terms of the Operating Agreement.

2.      Failure to State a Cause of Action: Plaintiffs' Complaint fails to state facts sufficient to constitute a viable cause of action against Defendants.

3.      Laches: Plaintiffs' claims are barred in whole or in part by the doctrine of laches.

4.      Estoppel: Plaintiffs are estopped in whole or in part from asserting the claims alleged.

5.      Waiver: Plaintiffs' claims are barred in whole or in part by the doctrine of waiver.

6.      Unclean Hands: Plaintiffs' claims are barred by the doctrine of unclean hands.

7.      Failure to Mitigate: Plaintiffs are barred from claiming injuries or damages because Plaintiffs caused such injuries or damages and have failed to mitigate their damages, if any.

8.     No Attorney's Fees: Plaintiffs' Complaint fails to state facts sufficient to support an award of attorney's fees and costs against Defendants.

9.     No Damages: Plaintiffs' claims are barred because Plaintiffs' Complaint fails to state facts sufficient to support a claim for general, compensatory, special, and/or economic damages.

10.     Due Diligence: Defendants exercised due diligence and relied in good faith on the representatives of others, and were not aware of or had no way of becoming aware of any alleged wrongdoing.

11.     Business Judgment Rule: Defendants' actions are protected by the Business Judgment Rule.

12.     Legitimate Business Activity: Defendants' activities with respect to Plaintiffs were justified, as such activities were proper, fair, and legitimate business activities and/or undertaken for business-related reasons and were not arbitrary, capricious, or unlawful.

13.     Good faith: Plaintiffs' claims are barred because Defendants acted reasonably and in good faith at all times based on relevant facts and circumstances known by them.

14.     No Malice, Oppression, or Fraud: Defendants acted, at all times, reasonably and in good faith and at no time acted with malice, oppression, or fraud.

15.     Speculative and Uncertain Damages: Defendants allege that Plaintiffs' losses, if any, are speculative and/or uncertain and, therefore, are not compensable.

16.     Ratification: Plaintiffs' claims are barred in whole or in part because any conduct by Defendants were ratified by Plaintiffs.

17.     No Intent: Plaintiffs' Complaint is barred because Defendants, to the extent any of the alleged acts in the Complaint were committed, which Defendants specifically deny, did not

have the requisite intent.

     18.     **Unknown Defenses:** Defendants allege that it may have other separate and/or additional defenses of which it is not aware, and hereby reserve the right to assert them by amending this Answer as discovery continues.

Dated: January 12, 2022          Respectfully Submitted,

          By:  *s/ Alice Conway Powers*
               Alice Conway Powers
               LEWIS BRISBOIS BISGAARD & SMITH LLP
               1700 Lincoln Street, Suite 4000
               Denver, Colorado 80203
               Tel:  303.861.7760
               Alice.Powers@lewisbrisbois.com
               Attorneys for David Kramer and Colorado Agri
               Products, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of January, 2021, I presented the foregoing DEFENDANTS' ANSWER TO COMPLAINT AND JURY DEMAND to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of the filing to the following:

Peter G. Koclanes
Nicholas M. DeWeese
Sherman & Howard L.L.C.
675 Fifteenth Street, Suite 2300
Denver, CO 80202
pkoclanes@shermanhoward.com
ndeweese@shermanhoward.com

*s/ Alice Conway Powers*

A duly signed original is on file at the Law
Offices of LEWIS BRISBOIS