IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-03120-CMA-NRN

WEINREIS ETHANOL, LLC, a North Dakota limited liability company;
LAPASEOTES LAND LLC, a Nebraska limited liability company;
DINKLAGE FEED YARD, INC., a Nebraska corporation; and
EAST COAST AG HOLDINGS LLC, a Delaware limited liability company,

Plaintiffs,

v.

DAVID KRAMER;
COLORADO AGRI PRODUCTS, LLC, a Colorado limited liability company; and
JOHN AND JANE DOES NOS. 1-25,

Defendants.

---

## ORDER ON
## DEFENDANTS' MOTION FOR LEAVE TO RESTRICT (Dkt. #14)

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter is before the Court pursuant to an Order by Judge Christine M. Arguello, Dkt. #27, referring Defendants' Motion for Leave to Restrict this entire case, including the entire Complaint and all exhibits or, in the alternative, certain extensive paragraphs from the Complaint plus the exhibits. *See* Dkt. #14.

This is a business dispute between investors in Bridgeport Ethanol, LLC, and Defendants David Kramer and Colorado Agri Products, LLC or "CAP". CAP, alleged to be controlled by Kramer, is the beneficiary of a management agreement with Bridgeport Ethanol. *See* Dkt. 1-2 (Management Agreement). The allegations in the Complaint are that Kramer, in his position as managing member of Bridgeport Ethanol and through

CAP, is engaging in self-dealing to the benefit of himself and other entities that he controls, Sterling Ethanol and Yuma Ethanol, to the detriment of Bridgeport Ethanol and its investors. Among other things, the Complaint alleges that when the manager of the Bridgeport, Nebraska ethanol plant wanted to disclose financial information and potential improprieties to the Bridgeport Ethanol Board, Kramer terminated the manager, thereby denying the Bridgeport Board access to the damning financial information. Kramer allegedly replaced the manager with a former associate of his. Other allegations in the Complaint include that Mr. Kramer (who appears to be a drag racing afficionado) has obtained corporate sponsorships for benefit of his personal drag racing team via quid pro quo agreements with suppliers or customers, to the detriment of Bridgeport Ethanol.

The Complaint includes one claim for breach of the Bridgeport Operating Agreement and breach of the implied duty of good faith and fair dealing. There is a second claim for an accounting and access to books and records. *See* Dkt. #1 at 34–35.

Defendants assert that "the entire proceeding" should be restricted from public access. Dkt. #14 at 2. In the alternative, Defendants ask that the Complaint (Dkt. #1), be restricted in its entirety, along with all the exhibits (Dkts. #1-1 through #1-5) attached to the Complaint. Dkt. #1-1 is the Operating Agreement of Bridgeport Ethanol which agreement is the subject of the Breach of Contract claim. Dkt. #1-2 is the Management Agreement between Bridgeport Ethanol and CAP, whereby CAP is given the right to manage and operate the ethanol production facilities and co-product production at the Bridgeport ethanol plant. Dkt. #1-3 is a Wet Distillers Grain Marketing Agreement between Bridgeport Ethanol and CAP for the purposes of marketing all wet distillers

grains produced at the Bridgeport ethanol production plant. Dkt. #1-4 is a Grain Purchasing Agreement between Bridgeport Ethanol and CAP. And finally, Dkt. #1-5 is Enzyme and Yeast Supply Agreement between Novozymes North America, Inc. and Sterling Ethanol, Yuma Ethanol, and Bridgeport Ethanol, effective September 5, 2018, and signed by Defendant David Kramer as President and Chairman of the Board of Sterling Ethanol, Yuma Ethanol and Bridgeport Ethanol. The exhibits were attached to the Complaint supposedly to demonstrate the alleged self-dealing and breaches of duty by Kramer.

Out of an abundance of caution, on December 20, 2021, I ordered that, pending the hearing on Defendants' Motion to Restrict, the exhibits to the Complaint, Dkt. ##1–5, be placed under Level 1 restriction. *See* Dkt. #16.

I held a hearing and heard argument on Defendants' Motion to Restrict on January 11, 2022. *See* Dkt. #24, Courtroom Minutes.

**Defendants' Arguments**

Defendants argue that Complaint and accompanying exhibits should be sealed under D.C.COLO.LCivR 7.2(c), which allows for the restriction from public view where the interest to be protected outweighs the presumption of public access. The rule requires the moving party to identify a clear injury that would result if access is not restricted. *Id.* The moving party must also explain why alternatives to restricted access, such as redaction, summarization or partial restriction are not adequate to protect the asserted interest to be protected. *Id.*

The main argument for restricting the Complaint and the exhibits is that the Operating Agreement, by its terms, is supposed be confidential, and the Plaintiffs are

supposedly bound by those confidentiality provisions and are "prohibited" from disclosing any of the information contained in the Operating Agreement. Defendants assert that in the face of these confidentiality provisions, "in numerous paragraphs in their Complaint," Plaintiffs have shared "confidential and proprietary information contained in the Operating Agreement." Dkt. #14 at 5. The paragraphs in the Complaint cited as disclosing allegedly confidential information include ¶¶ 27–34, ¶ 71, ¶¶ 39–47, ¶¶ 49–51, ¶¶ 65–66, and ¶ 75.

Defendants argue (without providing any specific details) that the unrestricted filing of the Complaint and the attached documents harms Kramer and CAP "because it reveals confidential trade secrets and frustrates CAP's competitive advantage." Dkt. #14 at 5. Defendants also say that public disclosure of the exhibits other than the Operating Agreement frustrates the competitive advantage of the third parties with whom CAP or Bridgeport has contracted. *Id.* As to the specifics of the "confidential and proprietary information" contained in the Management Agreement between Bridgeport and CAP (Dkt. #1-2), Defendants argue vaguely that the document "reveals numerous inner workings" of both CAP and Bridgeport, including the "processes" for completing management responsibilities, financial operating procedures and fees structures, and provides for dispute resolution procedures arising from the agreement. Dkt. #14 at 6.

Surprisingly, Defendants have taken the position in their Motion (and at oral argument) that they are not seeking redaction of only certain portions of the five exhibits. Instead, they take the absolutist position that, if the case is not completely restricted, the entirety of the exhibits and any quotation of the exhibits in the Complaint should be concealed from public view. *See* Dkt. #14 at 3 ("Both because one of the

4

documents sought to be restricted is Plaintiffs' Complaint, because Plaintiffs rely on the contents of Exhibits 1–5 throughout their Complaint, and because the documents are nearly entirely comprised of highly confidential and proprietary information, a less restrictive alternative, such as redaction, is not possible for this material."); *see also id*. at 8 ("As such, if the Court will not restrict this proceeding in its entirety, these agreements should be restricted in their entirety to only the parties and the Court (Level 1), and each quotation of these documents within the Complaint should be redacted (or the Complaint should itself be restricted)."). This absolutist position is inconsistent with the local rule.

### Analysis

"Whether judicial records and other case-related information should be sealed or otherwise withheld from the public is a matter left to the sound discretion of the district court." *Mann v. Boatright*, 477 F.3d 1140, 1149 (10th Cir. 2007) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 599 (1978)). The common-law right of access to judicial records has long been recognized by courts. *See id.*; *Lanphere & Urbaniak v. Colo.*, 21 F.3d 1508, 1511 (10th Cir. 1994). In keeping with the American ideals of government, court proceedings are presumptively open to the public. As Judge John Kane has rightly stated:

> We begin with the fundamental presupposition that it is the responsibility of judges to avoid secrecy, in camera hearings and the concealment of the judicial process from public view. Courts are public institutions which exist for the public to serve the public interest. Even a superficial recognition of our judicial history compels one to recognize that secret court proceedings are anathema to a free society.

*M.M. v. Zavaras*, 939 F. Supp. 799, 801 (D. Colo. 1996) (internal citation omitted), *aff'd*, 139 F.3d 798 (10th Cir.1998). To quote Judge Kane again: "[L]awsuits are public events

and the public has a legitimate interest in knowing the facts involved in them." *Doe v. U.S. Dep't of Justice*, 93 F.R.D. 483, 484 (D. Colo. 1982) (quoting *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mont. 1974)); *see also Stroup v. United Airlines, Inc.,* 2016 WL 7176717, at *4 (D. Colo. Sept. 16, 2016) (explaining that the "general policy and presumption in this District is . . . to keep litigation open to the public, barring significant and particularized reasons for confidentiality.").

This is consistent with the principles articulated by courts in other federal circuits as well: "Judicial records belong to the American people; they are public, not private, documents." *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 417 (5th Cir. 2021). "The public's right of access to judicial records is a fundamental element of the rule of law." *In re Leopold to Unseal Certain Elec. Surveillance Applications & Orders*, 964 F.3d 1121, 1123 (D.C. Cir. 2020). "The public has an interest in transparent court proceedings that is independent of the parties' interests." *In re Gee*, No. 19-30953, 2019 WL 13067384, at *4 (5th Cir. Nov. 27, 2019) (Elrod, J., concurring) (emphasis omitted). The public right of access is premised upon the recognition that public monitoring of the courts fosters important values such as respect for the legal system. *In re Providence Journal Co.*, 293 F.3d 1, 9 (1st Cir. 2002).

The District of Colorado's Local Rule 7.2 specifically states that it is the policy of the Court that, unless restricted by statute, rule of civil procedure, or court order, "the public shall have access to all documents filed with the court and all court proceedings." D.C.COLO.LCivR 7.2(a). The Rule does allow for restriction to public access if the party seeking restriction can describe the interest to be protected and explain why such interest outweighs the presumption of public access. D.C.COLO.LCivR 7.2(c)(2).

6

Personal privacy and business trade secrets are among the interests that may justify restriction. *See Shell v. Am. Family Rights Ass'n,* No. 09-cv-00309-MSK-KMT, 2012 WL 13005966, at *2 (D. Colo. Aug. 27, 2012) (granting motion to restrict plaintiff's list of trade secrets). But stipulations between the parties regarding the propriety of restriction, alone, are insufficient. D.C.COLO.LCivR 7.2(c)(2). The party seeking restriction must "identify a clearly defined and serious injury that would result if access is not restricted." D.C.COLO.LCivR 7.2(c)(3). The moving party also must "explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question." D.C.COLO.LCivR 7.2(c)(4).

"[T]he 'burden' under Rule 7.2 is squarely on the party that seeks to restrict the public's access to court proceedings or dispositive motions." *Stroup v. United Airlines, Inc.*, Civ. No. 15-cv-01389-WYD-CBS, 2016 WL 7176717, at *8 (D. Colo., Sept. 16, 2016); *see also XY LLC, v. Trans Ova Genetics, LC*, No. 13-cv-00876-WJM-NYW, 2015 WL 7014419, at *2 (D. Colo. Nov. 12, 2015) (the party seeking restriction has the sole burden of persuasion regarding the multi-part showing under Rule 7.2(c)). "A showing of compelling reasons for restriction of public access is necessary, as it is critical that the public be able to review the factual basis of this court's decisions and evaluate the court's rationale so that it may be confident that the court is functioning as a neutral arbiter." *Id*. As Judge Wang explained in *Trans Ova Genetics*, under our local rule, the precedent of this District, and the presumptive common law right of public access, "a party seeking to restrict access may not simply point to confidentiality designations with respect to materials produced in discovery and/or state that it 'believes' certain

materials are competitively sensitive (without evidentiary support) in an attempt to secure wholesale sealing of entire legal briefs and accompanying exhibits." *Id.*

I find that Defendants here have failed to meet the burden required to justify sealing or restricting of the complaint or the attached exhibits. Despite Defendants' protestations, this appears to the Court to be an unexceptional business dispute between members of a company alleging self-dealing and breaches of an operating agreement. In this regard, Defendants' request to restrict the entire case is preposterous. Indeed, this overreaching and unjustified demand tends to taint every argument made by Defendants. If Defendants wanted to avoid any public embarrassment and have any legal disputes arising from the Operating Agreement be resolved in secret, they could have included a private arbitration clause. Absent such a clause, a business dispute such as this will be resolved in a public court of law, with the allegations and defenses fairly tested in the cleansing light of day. As the United States District Court for the District of Utah stated in rejecting a similar request to seal an entire civil case, "In nearly all civil and criminal litigation filed in the United States Courts, one party asserts that the allegations leveled against it by another party are patently false, and the result of the litigation may quickly prove that. However, if the purported falsity of the complaint's allegations were sufficient to seal an entire case, then the law would recognize a presumption to seal instead of a presumption of openness." *Miller v. Fluent Home, LLC*, Case No. 2:20-cv-00641, 2020 WL 5659051, at *2 (D. Utah, Sept. 23, 2020).

As to Defendants' request for alternative restriction of portions of the Complaint that reference the Operating Agreement and other exhibits, Defendants have also failed

to meet their burden. Having reviewed the Operating Agreement in question and the attached exhibits, there is nothing special, unusual or obviously competitively sensitive about the operating agreement or other exhibits that would justify restriction. *See SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2012 WL 2917116, at *7 (D. Colo. July 16, 2012) (explaining that to overcome the "presumption of public access" a party must, "with particularity and on a document-by-document basis, establish why access should be restricted, including identifying the specific injury that would result if access to a particular document is not restricted"). Defendants have not made the showing of "compelling reasons" for restriction that this Court requires. The repetition of the mantra that the documents themselves provide that they should be maintained as confidential is not enough. Defendants make conclusory assertions that disclosure of the documents supposedly "reveals confidential trade secrets and frustrates CAP's competitive advantage." Dkt. #14 at 5. Yet, beyond conclusory arguments of counsel, they have provided no evidence or affidavits to that effect. The trade secrets and supposed competitive advantage are in no way apparent from the face of the Operating Agreement, which appears to be a run-of-the-mill LLC document. Defendants' insistence on taking an "all or nothing" approach, and not proposing the redaction of certain price or cost figures that do appear in some of the other exhibits, further undercuts their argument. The local rule requires that the party seeking restriction show why more limited restriction, such as redaction of sensitive portions of a document, would not be sufficient to protect the alleged interest.

**Conclusion**

For all of the above reasons, the Court finds that Defendants have not met their burden to show that the lawsuit as a whole, the Complaint, or the exhibits to the Complaint should be restricted from public access. Defendants' Motion to Restrict Proceeding (Dkt. #14) is **DENIED**, and the Clerk is further **ORDERED** to lift any restrictions on public access to the documents previously filed in this case.

Date: January 20, 2022

_____
N. Reid Neureiter
United States Magistrate Judge